Good morning, Your Honors. I would like to reserve at least two minutes for rebuttal, and hopefully I'll keep everything short here. The Court did ask us to address at the front end the jurisdictional question raised yesterday. There is no jurisdictional question. I'm sorry, did you introduce yourself? Oh, I'm sorry. Robert Weems, on behalf of the plaintiff and the appellate. You don't get credit if you don't introduce yourself. Okay, go ahead. Thank you. Yes, the question of who's the proper party here. The question of the proper party is, you know, Mr. Eilrich is a proper party. He can also be substituted under Rule 43. This is not an issue of jurisdiction. This is an issue of administrative convenience. We are happy to change the name. Rule 43 requires us to make the request to the court and serve a copy on his successor in interest. But the jurisdictional question is, you know, it's 42 U.S.C. 404D, makes his surviving spouse entitled to his benefits if any are due. And the California Probate Code 6400-6401 makes his wife his heir. So it's just a simple matter of if the court would prefer. I think it's absolutely at this level as opposed to, as a Rule 25 issue in the lower court, a matter of preference and convenience. There's no actual requirement, as I read the rule, to make the substitution of the party. However, we are more than happy to do it. And since the suggestion has been made, we will do so if that's what the court would like us to do, because it is, in our opinion, a purely administrative matter. Now, counsel for the Commissioner had filed something asking to go to mediation. I think the filing specifically mentioned the jurisdictional issue. I'll ask him, when he stands up, whether his contention is that this matter is appropriate for mediation on the merits as well. But do you think it would be appropriate for mediation from your side of it? I do not, Your Honor. And these Social Security cases are rarely appropriate for mediation. They are routinely returned back after the reference. So that's, I guess, the short and sweet answer to the question is, no, I don't think that this is an appropriate case for mediation and don't think it would forward it. Moving to the merits of the case, Mr. Eilrich basically suffered a series of groin injuries and colon difficulties that caused him pain in the lower region and in his lower extremities. Under the issues as framed by the Commissioner, the first being whether he had a severe impairment is step two of our five-step process, and it is a de minimis standard. We do believe that the evidence put forward before the ALJ and the district court established at minimum one severe limitation, that being the limitation in walking, which would make him not even appropriate for light work. The ALJ relied on a statement from May of 2000, which is in ER 19, by his treating physician, that there was disproportionate pain to what he found objectively in the year 2000. ER 18, which is, I believe, June of 2002, which is the period where we are now looking at his claim disability, the his same treating physician both characterizes his prior examination as being non-diagnostic and also notes that, in his opinion, this claimant has, you know, has excessively sensitive nerves. It isn't so that the doctor here never doubts the pain, right? And what has happened in this case is both the ALJ and the district court said, we want objective medical evidence of pain, which is the wrong standard. The standard is, is there objective, you know, is there proof of an objective medical condition that would cause pain? Yes. At that point, we move on to, you know, pain, which is a subjective thing. Here, his doctor agreed he had the pain. He testified to having the pain. And the doctor then went forward and gave him a California placard for a disabled person. Now, why that's significant is not as the ALJ tried to characterize it or the lower court tried to characterize it, a finding of disability which is reserved to the ALJ and then to the court. It's because it's a certification that this man has significant limitations in his lower extremities. You can't have that finding. I mean ---- Was there extensive testing done and he was consistently within the range of normal? Wasn't that the reason why Dr. Sand concluded that he couldn't pinpoint the cause of the reported symptoms of pain and thought that the pain was out of proportion with the symptoms noted in the test results? In 2000, what he says is it's disproportionate pain to the test results. But he doesn't say that the pain doesn't exist. And then in 2002, when he's still the same treating doctor, both discussing his prior findings from 2000, he says this was ñ those were non-diagnostic testing that he was doing, so not testing that would lead him to be able to narrow it necessarily, and also that he finds that there are sensitive nerve endings. He does not discredit this man's pain. And pain is subjective. And this doctor finds it's there. The doctor gives him a trigger point injection and sees that there is some relief that comes from that trigger point injection. So we do have the medical evidence of conditions that cause pain. We do have a doctor accepting the representations of pain made by his patient and that they are disproportionate. Being disproportionate doesn't mean they don't exist. It means they're more than you would expect. And why are they more than you would expect, in his opinion, is because of sensitive nerve endings as opposed to the polyps and the pure difficulties in his colon and his hernias. So I do think that right out of the box, just on that, whether there is a severe impairment, the evidence is more than sufficient and was actually uncontroverted. I don't think it is controverted in any way that he has a severe impairment that affects his lower extremities, which is his ability to walk, which is his ability to do work. So just on that alone, that limits him to light work or less based on the vocational expert's testimony. If he's unable to do at least medium work, he's unable to find any jobs, the Court, in fact, could find this guy disabled right now, today, without even sending it back under or to send it back under Sentence 4 on the severe impairment issue, which was put, which was highlighted by the Commissioner. As to Sentence 6, we do think that it is appropriate for Sentence 6. There was, once he finally had medical insurance again, when he turned 65, they were able to start doing actual exploratory work on him, and they find that there are progressively worsening conditions of the polyps, much harder than they expected them to be. So we have what was originally in 2000 thought to be a soft condition that becomes a hard condition by 2010. It's a progressing condition. So this stuff that happens later is at least some evidence and indicative and maybe of significance to an ALJ to show that there was a medical condition that could cause the level of pain that he was testifying to. And as I ask for reserve, and I'm down to one minute, unless there are questions, I will sit. Okay. Thank you. Good morning, Your Honors. I'm Amarat Foley, Commissioner of Social Security. Briefly, I think, we think that the substitution filed by opposite counsel has solved the jurisdictional issue. So I move on unless you have questions to the main matters in this appeal. Very briefly, Mr. Ehrlich. I'm sorry, you're okay with the Rule 43? Yes, we're okay with the substitution, Your Honor. Very briefly, Mr. Ehrlich was unable to prove that he had a severe impairment before his disability insurance expired in December 2002. His claim covered six months prior to December 2002. On appeal, Mr. Ehrlich faces additional hurdles. He waived a number of issues by failing to raise them or by explicitly waiving them in the district court. Among those are the Ehrlich's credibility finding that wasn't raised in the district court, and that's highly significant because in the absence of sufficient medical evidence, this appeal is about mostly Mr. Ehrlich's credibility. We also believe the waivers are compounded by the lack of reply brief in this case, Your Honors. And I'd be happy to answer any questions that you have. Well, what troubles me is exactly how counsel framed the argument in his opening. You have someone who post-2002, there's no doubt that this man had a serious and progressive, and I don't know what the cause of death was, whether it's related, but it certainly was serious, progressive, and no disputed about it in 2010. So there are cases in our circuit, I've had some, where this issue of post-entitlement arises, and as counsel argued, it does, it is within the purview of the agency to look at later developments and say, you know, maybe they were disproportionate, but in fact there was a good reason for it. So that's a look-back aspect. But what is troubling to me is the severity finding. Because our circuit law is that it's a minimal standard. It's a screen out from a screen of really frivolous cases or weak cases. And in the totality here, I'm concerned that that was a bad call. Let me address first your second question, Your Honor, and then I will look at the evidence outside that short six-month period. It's true that step two is a de minimis threshold, but it's still Clement's burden to present sufficient evidence that he had a severe impairment. Here, during the relevant period and even before that, and until even 2003, 2004, you see a number of physical examinations, diagnostic lab studies, and essentially they find that he has a number of medical determinable impairments. He has essentially irritable bowel syndrome, diverticulosis, and high blood pressure that's under control. But his doctors cannot find any significant anomalies. They can't find any limitations. So first, it's not only that, you know, you have medically determinable impairment and that you have some pain. That's not only the issue. You have to show that you also have limitations. He was examined a number of times, and he was found, there was no limitations found by his doctors. It's true, plenty of complaints of pain. But again, he didn't dispute the AIG's credibility finding. And repeatedly, not only on one occasion, repeatedly, not only in 2000, in 2002, but even you can go back to 1997, his doctors, including four surgeons, can't explain his pain and find it out of proportion. He has actually symptoms. If you look at the... the past history, notwithstanding what his condition was and the discoveries were in 2010, that those are not called into question at all by that evidence. That, in fact, disproportionate exaggeration, whatever, it turns out that once they penetrated his body and actually got in there and looked, golly gee, you know, the guy really did have something wrong with him. So let me address this question, Your Honor, just to finish. All the other evidence essentially... By the way, he had medical insurance until August 2003. It's in the records if you look at the Northeastern Clinic. And then in 2007, he was admitted to a sliding fee clinic. But even essentially, if you look until 2003, 2004, there is no medical evidence there. Now, you're right, in 2010, he had exploratory surgery. And the doctor found intestinal adhesions as well as an urnia that seems to be a new impairment on one side. I believe it was the left or the right, yeah. The doctor was asked whether he could explain, that could explain his pain like seven years earlier and his level of pain, and he was unable to do so. So essentially, you have a surgeon, you have all these treating doctors, and you have a surgeon seven years later that can't explain. And you're right, Your Honor, in some cases, you have some medical conditions that are, you know, progressive. It's not only having a progressive condition. It's somebody being able to look back seven years later and say, well, you know, this type of impairment has a kind of fairly normal, fairly typical development that I can tell you most likely seven years later, earlier, sorry, those things existed and that level of severity existed. That didn't seem to be the case because Dr. Galapagos, sorry, I'm probably mispronouncing his name, was unable, he was asked, he was unable to come up to a conclusion. And typically, we actually find something from the National Institute of Health that states, you know, intestinal adhesions are very common following surgery. Now, they have an unpredictable development. It doesn't mean that you have surgery today in the area of the colon and that you would develop severe adhesions at a certain set of time. So that seems to be consistent with the fact that Dr. Galapagos couldn't respond to the question. And now, even if you have a doubt, if you cannot tell one way or the other and the doctor couldn't, it's not his burden of proof, even though it's a very demining burden to show severity, Your Honor. Kennedy. Thank you.  Thank you. Thank you, Your Honors. And if I may, Your Honor, I'll speak very quickly to it. And I am terrible with the medical terminology. Injuinal area. And ER 12, basically, this is the area of hernias. This is the area of hernias, Your Honor. This is the type of pain of which he is complaining in 2002, and this is, in fact, what is found in 2010, is that he has these hernias. And they noted in 2002 that there might be such a hernia present, tiny but present. And I'll point the Court to the summary of record at the ALJ at ER 12 that we put in. So to say that a hernia is new as of 2010 just is not accurate. He had pain consistent with hernia in 2002. Counsel has indicated that the doctor, the surgeon, was asked that question as to whether he could say it explained or could have explained the pain in the earlier years. And he said he could not. Is that accurate? I would have to go back and look at it. I had not represented him below, Your Honor. I do think that even if the doctor who was treating and doing the surgery was not able to answer that question, that would not be dispositive. He indicated there were the type of conditions present which get worse over time. He's not a forensic expert. This is a matter of development of the record. It certainly minimally suggests that it is appropriate to send it back to the ALJ so the ALJ can make that determination. The ALJ, that's its job. That is the disability finding. All right. Thank you. Thank you. All right, counsel, thank you for the argument. The case is submitted.
judges: Garbis, Fisher, Nguyen